IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

RICKY E. MELLON                                                                                               PLAINTIFF

             v.                            CIVIL NO.        3:10-CV-3014

MISHAEL J. ASTRUE, Commissioner
of Social Security Administration                                                                   DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) payments under Title II and Title XVI of the Social Security Act (the Act). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g)*.*

### I.  Procedural Background:

Plaintiff filed his DIB and SSI applications on November 3, 2006, claiming disability since August 15, 2002, due to problems with his legs and ankles (Tr. 40, 84-92, 110). The state Disability Determination Services denied Plaintiff's applications (Tr. 48-53, 59-62). Pursuant to Plaintiff's request, ALJ conducted a hearing on April 14, 2009, where Plaintiff, a lay witness, and a vocational expert appeared and testified (Tr. 5-32).

The ALJ issued an unfavorable decision on August 11, 2009 (Tr. 40-47). The ALJ found that Plaintiff had severe impairments due to deep vein thrombosis and residuals of lower limb

fracture (Tr. 42 - Finding 3); Plaintiff did not have an impairment that met a listing for presumptive disability (Tr. 42 - Finding 4); and other work existed in significant numbers in the national economy that Plaintiff can perform (Tr. 46 - Finding 10, 189-191). As a result, the ALJ found that Plaintiff was not under a disability at any time through the date of his decision (Tr. 47). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review (Tr. 266-268).

The Plaintiff filed the current complaint on February 22, 2010 (ECF No. 1) contending that the ALJ made numerous errors, however, in his brief the Plaintiff asserts only that the ALJ 1) failed to develop the record, 2) that his determination of the Plaintiff's RFC was incorrect, 3) the ALJ failed to give appropriate weight to the Plaintiff's consultive psychologist and the ALJ's 4) decision was not supported by substantial evidence.

## II.  Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id*. As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the

evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his333 age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.  Applicable Facts

On May 6, 2004 the Plaintiff was seen at the Baxter Regional Medical Center complaining of pain in his right leg. A Right Lower Extremity Venous Doppler was performed and disclosed a clot in the popliteal vein that extends down to the posterior tibial vein. (T. 269) The Plaintiff was diagnosed with Deep venous thrombosis of the right popliteal and posterior tibial veins, tobacco dependence and probable alcohol dependence. (T. 260). The Plaintiff was given a prescription for Coumadin 5mg, counseled to stop smoking and drinking and discharged. (T. 261).

On July 17, 2005 the Plaintiff was involved in a single car motor vehicle accident and admitted to the Baxter Regional Medical Center Emergency Room (T. 237).  Because of the severity of the Plaintiff's injury Dr. Knox had originally tried to get the Plaintiff to a hospital in Little Rock and Springfield but was unable to obtain the admission of the Plaintiff to either hospital. (T. 240). The Plaintiff suffered a broken right talus and the fracture was set by Dr. Knox. (T. 238).   The Plaintiff was seen by Dr. Knox on August 2, 2005 and it was noted that the "fracture was anatomically aligned" and in "good position". The Plaintiff was placed in a short cast and told to be non-weightbearing. (Id. 229).  When Dr. Knox saw the Plaintiff again on September 15, 2005 he noted that the Plaintiff "admitted to weightbearing on his cast".  Dr. Knox noted that he was worried about infection and that he was going to get the Plaintiff into the Christian Clinic for p.o. Levaquin [1] for about two weeks. On October 27, 2005 Dr. Knox noted

---

[1] Levaquin is in a group of antibiotics called fluoroquinolones (flor-o-KWIN-o-lones). It fights bacteria in the body.

that the fracture had healed, the cast was removed and the Plaintiff was allowed to resume walking. (Id. 231). On December 12, 2005 Dr. Knox noted again that the fracture was healed but he advised the Plaintiff that he "could get some AVN at some point". (T. 232). It is difficult to know exactly what Dr. Knox is talking about but likely that he is referring to Avasculary necrosis. Avascular necrosis is the death of bone tissue due to a lack of blood supply. (See www.mayoclinic.com). An x-ray of the cervical spine (T. 250) and of the pelvis (T. 252) did not reveal any abnormalities.

On November 13, 2006 Plaintiff alleged disability due to physical impairments only (Tr. 110) which occurred on August 15, 2002 (Id., 106). Specifically, Plaintiff alleged that he could not work due to the following:

> I cannot get around very good. When I get up in the morning, I have to
> hold onto something to walk because they are really stiff, feels like I have
> a knife sticking in my heel. Sharp pain in legs where pins were put in.

(Tr. 110). Plaintiff also testified that "being able to stay on [his] feet" prevented him from working (Tr. 24).

On March 5, 2007 the Plaintiff presented to the Community Medical Center of Izard County Emergency Room with a laceration to his right knee at midnight on March 4, 2007. The report states that the Plaintiff was drinking with a friend when he brushed up against a metal object. (T. 301).

On March 8, 2007, due to the lack of evidence supporting Plaintiff's alleged impairments, the agency sent Plaintiff for a consultative examination with Hassan Najeeb Albataineh, M.D. (Tr. 44, 270-276). Upon conducting a physical examination, Dr. Albataineh noted that Plaintiff had a normal range of motion of his shoulders, elbows, wrists, hands, and cervical spine (Tr.

273). Plaintiff had limited range of motion of his hips, knees, and ankles (Tr. 273). A neurological examination showed that Plaintiff had normal reflexes of his biceps, triceps, patella, and Achilles, with no muscle weakness, atrophy, or sensory abnormalities (Tr. 274). Dr. Albataineh noted that Plaintiff limped (Tr. 274). Plaintiff had normal limb function and was able to grip, hold a pen, touch his fingertips to palm, and stand and walk without assistive devices (Tr. 274). Based on the results of his examination, Dr. Albataineh diagnosed Plaintiff with leg pain status post fractures, deep vein thrombosis, and gastric ulcers (Tr. 276). Dr. Albataineh opined that Plaintiff had moderate limitations in his ability to walk, stand, lift, and carry (Tr. 276).

On April 11, 2007 Dr. Robert Redd performed a Physical Residual Function Capacity Evaluation and concluded that the Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about 6 hours in an 8 hour workday, sit for 6 hours in an 8 hour work day and that he had no restrictions in his ability to push and/or pull. (T. 279). Dr. Redd's findings were affirmed by Dr. Jim Takach on August 6, 2007. (T. 290).

On January 28, 2008 the Plaintiff was seen by Dr. Vann Smith for a neuropsycho-diagnostic evaluation. Dr. Smith found the Plaintiff to have "Cognitive Dysfunction, Non-psychotic, Secondary to General Medical Conditions. (T. 294). Plaintiff admits that the ALJ ordered a mental evaluation, but the Plaintiff did not show up. See Plaintiff's Brief, at 13.

### IV. Discussion:

The ALJ determined that the claimant met the insured status requirements through March 31, 2007, that he had not engaged in substantial gainful activity since August 15, 2002 and that he had the sever impairments of deep vein thrombosis (DVT) and residuals of lower limb

fracture. The ALJ found, however, that the claimant did not have an impairment or combination of impairments that met or medically equaled on the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 and that the Plaintiff retained the residual functional capacity to occasionally lift/carry 10 pounds and frequently less than 10 pounds and that he could sit for 6 hours, stand/walk for 2 hours and occasionally climb, balance, crawl, stoop, knee, and crouch. (T. 42)

### 1. Development of the Record

The Plaintiff first contends that the ALJ failed to develop the record by not sending the Plaintiff for a consultive orthopedic or neurological examination (ECF No. 9, p. 10).

The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). The ALJ is not required to act as Plaintiff's counsel. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994) (ALJ not required to function as claimant's substitute counsel, but only to develop a reasonably complete record); *see also Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").

In this case the Plaintiff has a limited medical history. The ALJ ordered a consultive examination by Dr. Hassan Najeeb Albataineh, M.D. (Tr. 44, 270-276). Dr. Albataineh opined that Plaintiff had moderate limitations in his ability to walk, stand, lift, and carry (Tr. 276). The ALJ also had a Physical RFC performed by Dr. Robert Redd. Dr. Redd concluded that the Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about 6 hours in an 8 hour workday, sit for 6 hours in an 8 hour work day and that he had no

restrictions in his ability to push and/or pull. (T. 279). Dr. Redd's findings were affirmed by Dr. Jim Takach on August 6, 2007. (T. 290).

The ALJ also scheduled a consultive psychological examination which the Plaintiff failed to attend. Under the regulations of the Social Security Administration, the ALJ may find that a claimant is not disabled if the claimant, without good reason, refused to take part in a consultative examination. 20 C.F.R. § 404.1518(a). A "good reason" for failure to attend includes illness on the date of the scheduled examination or test. 20 C.F.R. § 404.1518(b). See 20 C.F.R. § 416.918(a) ("If you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination or test which we arrange for you to get information we need to determine your disability ..., we may find that you are not disabled ...."). Good reasons for failing to appear at a consultative examination include the following: (1) illness on the date of the scheduled examination or test; (2) not receiving timely notice of the scheduled examination or test, or receiving no notice at all; (3) being furnished incorrect or incomplete information, or being given incorrect information about the physician involved or the time or place of the examination or test; (4) having a death or serious illness in the claimant's immediate family; or (5) the claimant's treating physician objects to the examination or test. Id. § 416.918(b), (c). The Plaintiff has never offered any reason for his failure to attend the scheduled examination. The court finds that the ALJ properly developed the record.

**2) RFC**

The Plaintiff next contends that the ALJ's determination of the Plaintiff's RFC was not supported by substantial evidence. (ECF No. 9, p. 14).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §

404.1545(a)(1).  A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004).  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,*  245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace."  *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).  "Under this step, the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC." *Id*.

### A: Deep Vein Thrombosis

The Plaintiff contends that his disability occurred on August 15, 2002. (T. 110).  On May 6, 2004 the Plaintiff was seen at the Baxter Regional Medical Center complaining of pain in his right leg. The Plaintiff reported that he had DVT in his left leg approximately 3 years earlier. (T. 264). A Right Lower Extremity Venous Doppler was performed and disclosed a clot in the popliteal vein that extends down to the posterior tibial vein. (T. 269) The Plaintiff was diagnosed with Deep venous thrombosis of the right popliteal and posterior tibial veins, tobacco dependence and probable alcohol dependence. (T. 260). Dr. Cheney's report at the time noted

that the Plaintiff smokes a pack of cigarettes per day and has for 27 years and that he drinks 6-8 beers per day. (T. 263). The Plaintiff was given a prescription for Coumadin (anticoagulant) 5mg, counseled severely to stop smoking and drinking and discharged. (T. 260-261). He was also counseled about his diet because certain foods and beverages can make it so warfarin doesn't effectively prevent blood clots. (Id.)

Deep vein thrombosis (DVT) is a condition in which a blood clot (thrombus) forms in one or more of the deep veins in the body, usually in the legs. Deep vein thrombosis can cause leg pain, but often occurs without any symptoms. (See www.mayoclinic.com).  Smoking affects blood clotting and circulation, which can increase the risk of DVT. (See www.mayoclinic.com)

The Plaintiff was involved in a single vehicle accident on July 17, 2005 in which his right ankle was fractured. (T. 240).  The Social History Notes reveal that the Plaintiff was a "smoker" (Id.)  and that at the time of the accident his alcohol level was 324.8mg/dcl and that his urine screen was positive for marijuana. (T. 241). The medical records of August 18, 2006 indicate that the Plaintiff was a "smoker". (T. 234). On January 29, 2008 the Plaintiff reported to Dr. Vann Smith that he smoked a half pack of cigaretts per day. (T. 292).

In addition to the results of objective medical tests, an ALJ may properly consider the claimant's noncompliance with a treating physician's directions, *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir.2001), including failing to take prescription medications, Riggins, 177 F.3d at 693, seek treatment, *Comstock v. Chater*, 91 F.3d 1143, 1146-47 (8th Cir.1996), and quit smoking. *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir.1997). *Choate v. Barnhart,* 457 F.3d 865, 872 (C.A.8 (Mo.),2006).

It is clear that the Plaintiff chose to disregard his doctor's advice and stern warning and

-10-

continue to smoke and drink after his last DVT attack. In addition there is no evidence that the Coumadin and coumadin diet was not an effective treatment for the DVT. Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication). *Warre v. Commissioner of Social Sec. Admin*. 439 F.3d 1001, 1006 (C.A.9 (Or.),2006)

### B. Right Ankle Fracture:

The Plaintiff did suffer a severe right ankle fracture on July 17, 2005. Dr. Knox attempted to have the Plaintiff transferred to Little Rock Baptist Center and the Little Rock Medical center and Cox South in Springfield, Missouri but all refused the transfer. (T. 240). Dr. Knox performed the surgery (T. 242). Subsequent x-rays after surgery showed that the alignment appeared satisfactory. (T. 255). The Plaintiff was subsequently discharged on July 26, 2005 and when Dr. Knox saw him on October 27, 2005 he noted that the fracture had healed. (T. 231).

The ankle fracture seems to be the Plaintiff's main contention concerning his inability to work because he stated that when he gets up in the morning he has to hold onto something to get around and it feels like sharp pain in his legs where the pins were put in . (T. 110).

On March 8, 2007 the agency sent Plaintiff for a consultative examination with Hassan Najeeb Albataineh, M.D. who concluded that the Plaintiff had moderate limitation on his ability to walk, stand, lift and carry. (Tr. 44, 270-276). Dr. Albataineh noted that Plaintiff had a normal range of motion of his shoulders, elbows, wrists, hands, and cervical spine (Tr. 273). Plaintiff

had limited range of motion of his hips, knees, and ankles (Tr. 273). A neurological examination showed that Plaintiff had normal reflexes of his biceps, triceps, patella, and Achilles, with no muscle weakness, atrophy, or sensory abnormalities (Tr. 274). Dr. Albataineh noted that Plaintiff limped (Tr. 274) but that the Plaintiff had normal limb function and was able to grip, hold a pen, touch his fingertips to palm, and stand and walk without assistive devices (Tr. 274). Based on the results of his examination, Dr. Albataineh diagnosed Plaintiff with leg pain status post fractures, deep vein thrombosis, and gastric ulcers (Tr. 276)

      On April 11, 2007 Dr. Robert Redd performed a Physical Residual Function Capacity Evaluation and concluded that the Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about 6 hours in an 8 hour workday, sit for 6 hours in an 8 hour work day and that he had no restrictions in his ability to push and/or pull. (T. 279). Dr. Redd's findings were affirmed by Dr. Jim Takach on August 6, 2007. (T. 290).

      There is no medical evidence that the Plaintiff has a physiological limitation other than what was considered by the ALJ. Upon conducting a physical examination, Dr. Albataineh noted that Plaintiff had a normal range of motion of his shoulders, elbows, wrists, hands, and cervical spine (Tr. 273). Plaintiff had limited range of motion of his hips, knees, and ankles (Tr. 273). A neurological examination showed that Plaintiff had normal reflexes of his biceps, triceps, patella, and Achilles, with no muscle weakness, atrophy, or sensory abnormalities (Tr. 274).

      Plaintiff's daily activities also supports the ALJ's residual functional capacity assessment. The ALJ noted that Plaintiff was able to prepare simple meals and do occasional housekeeping; and was able to care for personal needs (Tr. 45). (See *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church).

Plaintiff testified that he lived by himself for the past four to five years and had worked at odd jobs since 2002. (T. 20-23). (*See Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor)). The Plaintiff also acknowledged that he helped his aunt do the yard (Tr.20-23). (See *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive were inconsistent with disabling pain).

In disability determinations, credibility assessments are in the first instance for the ALJ. *Smith v. Heckler*, 760 F.2d 184, 187 (8th Cir.1985); *O'Leary v. Schweiker*, 710 F.2d 1334, 1342 (8th Cir.1983).

Therefore, although it is clear that plaintiff suffers from some degree of impairment, he has not established that he is unable to engage in any and all gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled).

### C. Psychological Assessment:

The Plaintiff contends that the ALJ failed to give the report of neuropsychologist Dr. Vann Smith proper weight.

On January 28, 2008 the Plaintiff was seen by Dr. Vann Smith for a neuropsycho-diagnostic evaluation. Dr. Smith found the Plaintiff to have "Cognitive Dysfunction, Non-psychotic, Secondary to General Medical Conditions and Dr. Smith put forth the opinion that the Plaintiff was disabled at the time of his examination. (T. 294). **T**he determination of disability

however, was for the Commission to decide not Dr. Smith. See *Flynn v. Chater*, 107 F.3d 617, 622 (8th Cir. 1997); 20 C.F.R. §§ 404.1527(e)(1) and 416.927(e)(1); SSR 96-5p (1996) ("opinions on issues reserved to the Commissioner are never entitled to controlling weight").

Dr. Smith acknowledged that he did not review any of the medical records of the Plaintiff and based his opinion on the medical history as related by the Plaintiff which he considered reliable. Dr. Smith did state that he had requested the medical records from the Plaintiff's attorney but had not received them at the time of his report. (T. 292).

The Plaintiff did not allege any mental impairment when he filed his initial application for benefits. (T. 110). In an undated Disability Report the Plaintiff again only alleged the physical pain associated with his ankles. (T. 138). The Plaintiff never alleged a mental disability until the time of the hearing on April 14, 2009. The fact that the plaintiff did not allege mental impairment as a basis for his disability in his application for disability benefits is significant, even if the evidence of mental impairment was later developed. See *Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir.1993); *Dunahoo v. Apfel*, 241, F. 3d 1033, 1039 (8th Cir. 2001)**.**

The ALJ noted that the Plaintiff had no history of depression and no treatment of depression. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment).

Dr. Smith noted that when he saw the Plaintiff he was oriented in all spheres and his narrative were logical and informative with no evidence of hallucinations, delusion, or suicidal/homicidal ideation, intent plan, or impulse. (T. 292).  There was never any indication on any of the limited medical records that the Plaintiff suffered from any depression.  Dr. Smith's

assessment is based solely upon Plaintiff's own complaints and medical history reports. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that the ALJ may give less weight to a medical opinion that is based largely on subjective complaints rather than on objective medical evidence); *Vandenboom v. Barnhart*, 421 F.3d 745, 749 (8th Cir. 2005) (holding that the record supports ALJ's conclusion that treating physician's diagnosis and impressions were based largely on the plaintiff's subjective complaints with little objective medical support).

Plaintiff admits that the ALJ ordered a mental evaluation, but the Plaintiff did not show up. (See Plaintiff's Brief, at 13). Under the regulations of the Social Security Administration, the ALJ may find that a claimant is not disabled if the claimant, without good reason, refused to take part in a consultative examination. 20 C.F.R. § 404.1518(a). The Plaintiff offered no testimony at the time of hearing or subsequent affidavit to explain why the Plaintiff did not attend the consultive examination nor does the Plaintiff's attorney make any attempt to explain the failure to appear for the psychological consultive examination. (ECF No. 9, p. 13).

For the reasons previously stated, the court find fault with Plaintiff's argument that the ALJ failed to properly consider Dr. Smith's assessment. A consultive examination was ordered which the Plaintiff failed to attend without just cause. It is also remarkable to note that he never sought out mental health treatment nor ever complained of mental impairments prior to his hearing with the ALJ. As such, I do not find the ALJ's failure to order an additional consultative exam to be fatal.

The ALJ used vocational expert testimony to determine whether Plaintiff can perform other work available in significant numbers in the national economy (Tr. 46 - Finding 10). The ALJ asked the vocational expert to assume a hypothetical person of Plaintiff's age, education,

and residual functional capacity, and whether there were other jobs that existed in significant numbers in the national economy that the hypothetical individual could perform (Tr. 189-191). In response to the ALJ's hypothetical question, the vocational expert testified that the hypothetical individual was able to perform the requirements of the following representative occupations:

> [E]scort vehicle driver, with 181 such jobs in the region and 26,109 jobs in the national economy; machine tenders, with 107 such jobs in the region and 9,331 jobs in the national economy; and sorters, with 50 such jobs in the region and 1,191 jobs in the national economy. (Tr. 191).

Testimony from a vocational expert based upon a properly phrased hypothetical question constitutes substantial evidence. *Warburton v. Apfel*, 188 F.3d 1047, 1050-51 (8th Cir. 1999); *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996).

## V. Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated this 19th day of May 2011.

/s/ *J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE